IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID YOUNG O'SHIELDS,          )
                                )
                Petitioner,     )
                                )
        v.                      )       1:13CV483
                                )
LEWIS SMITH,                    )
                                )
                Respondent.     )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has filed a Motion to Dismiss on Statute of Limitations Grounds (Docket Entry 4) and an Initial Answer (Docket Entry 3). In response, Petitioner filed a pleading entitled "Petitioner's Traverse to Response to Order to Show Cause." (Docket Entry 7.)

## Background

On April 21, 2009, Petitioner was convicted after a jury trial in Superior Court, Forsyth County to one count of statutory rape and one count of taking indecent liberties with a child, in cases 07 CRS 59191 and 07 CRS 59194. (Docket Entry 1, §§ 1-6.) He was sentenced to 216-269 months of imprisonment. (*Id.* § 3.) Petitioner filed a direct appeal and while the North Carolina Court of Appeals found no error in Petitioner's criminal judgment on June 15, 2010, it did remand to correct a clerical error. (*Id.* at 70-86.)[1] *See also State v. O'Shields*, 204 N.C. App. 597, 696 S.E.2d 923 (2010) ("The only error in this case was that

---

[1] Page citations to this document refer to page numbers in the CM/ECF footer.

the case number for the dismissed charge of first degree rape was inadvertently listed at the top of the verdict sheet for statutory rape, which was entirely accurate in all other respects. Therefore, we remand to the Forsyth County Superior Court for the sole purpose of correcting the case number.") Petitioner filed a petition for discretionary review in the Supreme Court of North Carolina on July 23, 2010, which was denied on October 7, 2010. (Docket Entry 1 at 88.)

On March 28, 2011, Petitioner filed a petition for writ of mandamus in the North Carolina Court of Appeals seeking an order requiring the trial court to correct the previously mentioned clerical error. (*Id.* at 89.) The North Carolina Court of Appeals dismissed the petition for writ of mandamus on April 14, 2011, without prejudice to re-file if the clerical error was not corrected by May 16, 2011. (*Id.*) Meanwhile, by April 12, 2011, the clerical error in question had been corrected. (*Id.* at 105-110.) Petitioner's federal habeas Petition was filed with this Court on June 17, 2013 and signed June 11, 2013. (Docket Entry 1.)

## Petitioner's Claims

Petitioner raises two claims: (1) the trial court committed plain and reversible error, requiring arrest of judgment, when it entered judgment against him in case 07 CRS 59194 and (2) the trial court committed plain error by failing to intervene and strike or limit the testimony of an expert witness. (*Id.* § 12.)

## Discussion

2

Respondent requests dismissal on the ground that the Petition was filed[2] beyond the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). (Docket Entry 4.) In order to assess this argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period *begins to run from* the latest of several potential starting dates:
>
> (A) *the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;*
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[2] "In [*Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379 (1988)], the Supreme Court held that a pro se prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." *Morales–Rivera v. United States*, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." *Id.* at 110–11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. *See Allen v. Mitchell*, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. *Cf. United States v. Torres*, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); *but see Smith v. Woodard*, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that *Houston*'s rule governed filing date of § 2254 petition); *Ostrander v. Angelone*, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (*i.e.*, the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

3

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Green v. Johnson*, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added). The record does not reveal any basis for concluding that subparagraph (C) of § 2244(d)(1) applies here.

Under subparagraph (A), Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Court must therefore ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended. Here, the North Carolina Court of Appeals affirmed Plaintiff's criminal convictions on June 15, 2010. Petitioner's convictions thus became final on Wednesday, January 5, 2011, 90 days after the October 7, 2010 decision of the Supreme Court of North Carolina denying Petitioner's petition for discretionary review. *See Clay v. United States*, 537 U.S. 522, 527, 123 S.Ct. 1072, 1076 (2003) (holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." (internal citations omitted)); *see also* Sup. Ct. R. 13.1 (allowing petitioners 90 days after highest state appellate court's denial to file for writ of certiorari). Petitioner's year to file thus began to run on January 5, 2011 and, absent tolling of some form, was set to expire one year later in early January of 2012. Yet, Petitioner's Petition was filed at the earliest on June 11, 2013.

Under subparagraph (B), Petitioner's one-year limitations period would begin on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented

4

from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). However, no such impediment is present in this action. Petitioner contends that under subparagraph (B), his one-year limitations period was statutorily tolled due to an impediment created by State action arising from the State's failure to promptly correct the relevant clerical matter in his case. (Docket Entry 1 at 29-33.) However, the remand of the North Carolina Court of Appeals for the correction of a clerical error created by an incorrect file number on a verdict sheet addressed a ministerial act and was therefore insufficient to restart Petitioner's year limitation period. *See United States v. Dodson*, 291 F.3d 268, 275 (4th Cir. 2002) (concluding that "finality is not delayed [for purposes of one-year period of limitation] if an appellate court disposes of all counts in a judgment of conviction but remands for a ministerial purpose that could not result in a valid second appeal"); *United States v. Wilson*, 256 F.3d 217, 220 (4th Cir. 2001) (concluding that a remand to vacate one count of conviction, after affirming the remaining counts of conviction, failed to toll the statute of limitations); *see also Richardson v. Gramley*, 998 F.2d 463, 465 (7th Cir. 1993) ("A judgment is not final if the appellate court has remanded the case to the lower court for further proceedings, *unless* the remand is for a purely 'ministerial' purpose, involving no discretion, such as recomputing prejudgment interest according to a set formula." (emphasis added)).[3]

And, even assuming that the limitations period restarted with the correction of the abovementioned clerical error, the instant Petition would still be time barred. Under this interpretation—which the undersigned does not accept—Petitioner's limitations period

---

[3] *Dodson* and *Wilson* concern Section 2255 proceedings, however, the interpretations of the limitation periods found in 28 U.S.C. §§ 2244(d)(1) and 2255 have equal applicability to one another. *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).

5

would have commenced on April 12, 2011, the date by which the clerical error in question would have been corrected, and have ended one year later in mid-April 2012. However, because Petitioner signed his Petition on June 11, 2013 and filed it with the Court on June 17, 2013, it was still more than a year late. In summary, the undersigned rejects Petitioner's argument that the State created an impediment to his timely filing of a federal habeas petition under subparagraph (B) by failing to promptly correct the clerical error described above. (Docket Entry 7 at 2.) And even if the undersigned were to accept this contention, it would not render the instant Petition timely. (*Id.*)[4]

In his response to Respondent's Motion to Dismiss (Docket Entry 4), Petitioner argues that the impediment that prevented him from filing the instant Petition within the one year limitations period was actually confusion generated by the trial court upon remand. Specifically, Petitioner asserts that the trial court documents issued to correct the above-mentioned clerical error lead him and his prior appellate counsel to believe that Petitioner

---

[4] Petitioner contends that the trial court failed to correct an error in his amended judgment and commitment. (Docket Entry 7 at 15.) Petitioner's initial judgment and commitment form indicates that he was found guilty of statutory rape in case number 07 CRS 059194. (Docket Entry 1 at 99.) However, case number 07 CRS 059194 involved first degree rape, not a charge of statutory rape. *O'Shields*, 204 N.C. App. 597, 696 S.E.2d 923 (2010) (noting that "the indictment in 07 CRS 059194 charged Defendant with one count of first degree rape of a child in violation of N.C. Gen. Stat. § 14-27.2(a)(1)"). On remand, the trial court amended the judgment and commitment to correctly indicate that Petitioner was found guilty of statutory rape in case number 07 CRS 59195. (Docket Entry 1 at 106.) Petitioner points out that the amended judgment and commitment still references a violation of N.C.G.S. § 14.27.2(A)(1), which is first degree rape of a child. (Docket Entry 7 at 15.) Given that in North Carolina statutory rape is set forth in N.C.G.S. § 14-27.7A(a) and first degree rape of a child is set forth in N.C.G.S. § 14.27.2(A)(1), Petitioner may well be correct. But the undersigned fails to see how the potential continuing existence of a clerical error in Petitioner's amended judgment and commitment somehow created an impediment to the timely filing of his federal habeas petition. This purported clerical error is tangential to the essence of Petitioner's argument, which is that he missed his habeas deadline because he believed that the amended appellate entries appointed him an attorney and a second round of direct review. As explained above, Petitioner's argument does not excuse the late filing of his Petition.

6

had been awarded another round of appellate review by the trial court. (Docket Entry 7 at 7-9.) ("Petitioner received modified versions of the verdict sheet . . ., commitment, judicial finding form, an ambiguous appellate order, and a docket sheet instructing Petitioner that a court hearing was held on April 12, 2011 . . . . The ambiguous appellate entries Order led Petitioner and his prior appellate counsel to believe that Petitioner would be appointed an appellate attorney . . . . Obviously, leading Petitioner to believe an attorney was appointed to pursue his case when none was appointed to pursue the case created an impediment to Petitioner filing for Federal habeas relief."). This argument fails for a number of reasons.

First, subparagraph (B) requires Petitioner to show an impediment created by State action which violated the Constitution or laws of the United States and which actually prevented him from filing a petition under § 2254. 28 U.S.C. § 2244(d)(1)(B); *see also Winkfield v. Bagley*, 66 F. App'x 578, 582–83 (6th Cir. 2003) ("'Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the petition.'" (*quoting Dunker v. Bissonnette*, 154 F. Supp. 2d 95, 105 (D. Mass. 2001)). Here, however, Petitioner has not demonstrated State conduct which violated the Constitution or federal law, nor that any such conduct actually prevented him from filing the instant Petition. On remand, the trial court corrected the mislabeled verdict sheet to reflect the correct case number. The trial court also corrected Petitioner's judgment and commitment form, the judicial findings and order for sex offenders form, and the appellate entries to reflect the appropriate case number. In short, the trial court merely amended a number of trial and appellate documents in Petitioner's underlying criminal case in order to correct a clerical matter and then back-dated them *nunc pro tunc* to the date of Petitioner's

conviction and sentencing. Petitioner has failed to persuade the undersigned that this amounts to a violation of the Constitution or federal law or that it prevented him from filing a timely federal habeas petition.[5]

Second, the "ambiguous" appellate entries Petitioner contends mislead him into refraining from filing a timely federal habeas petition are clear on their face and not ambiguous. (Docket Entry 1 at 109-110.) The April 12, 2011 appellate entries indicate that Petitioner had given notice of appeal to the North Carolina Court of Appeals, that he was represented by the appellate defender, and that he was indigent. (*Id.*) It also lists the corrected case number. (*Id.*) While the document is dated April 12, 2011, it also states "NUNC PRO TUNC 4/21/09." (*Id.*) The Latin phrase "*nunc pro tunc*" means "now for then" and "permits acts to be done after the time they should have been done with a retroactive effect." *Sarango v. Att'y Gen. of the U.S.*, 651 F.3d 380, 383 n.2 (3d Cir. 2011) (citation omitted). "[N]*unc pro tunc*" is defined as "[h]aving retroactive legal effect through a court's inherent power." (*Id.* citing *Blacks Law Dictionary* 1174 (9th ed. 2009).) Thus, the appellate entries (created on April 12, 2011 but backdated to April 21, 2009) do nothing more than correct clerical errors identified in Petitioner's original appellate entries form (dated April 21, 2009). (*See* Docket Entry 1 at 102-03, 109-110.) There is therefore nothing in the April 12, 2011 appellate entries that would, or should, give rise to a reasonable belief

---

[5] At times, Petitioner appears to contend that in correcting the case number in his judgment and commitment form, the judicial findings and order for sex offenders form, and the appellate entries form, the trial court exceeded the scope of the appellate court remand order, which only ordered the trial court to correct the case number of a single verdict sheet. (*See, e.g.*, Docket Entry 7 at 11.) However, this argument is immaterial to the issue of the timeliness of his federal habeas petition. As explained above, the manner in which the trial court conducted itself upon remand was insufficient to entitle Petitioner to statutory tolling under subparagraph (B) or, for that matter, under any subparagraph of § 2244(d)(1).

8

that Petitioner was somehow receiving an additional round of direct appellate review. The undersigned rejects Petitioner's assertions to the contrary. Petitioner's misreading of the amended appellate entries does not entitle him to statutory tolling under subparagraph (B) or, for that matter, under any subparagraph of § 2244(d)(1). *See, e.g., Goldman v. Keller*, No. 1:11CV258, 2012 WL 2904577, *3 (M.D.N.C. July 16 2012) ("Although Petitioner, like most prisoners, may not have legal knowledge or training, this condition is not State-created.")

Third, Petitioner's assertion that the amended appellate entries discussed above also led his prior appellate attorney to believe Petitioner would be receiving an additional round of direct appellate review is unsupported by the documentation attached to the Petition. What this documentation does contain is a letter from Petitioner's prior appellate counsel dated October 16, 2012 and stating, "'[Y]ou [Petitioner] included [in your prior letter] appellate entries and new appellate entries corrected on 12 April 2011. This firm has not been retained to represent you on these matters; rather, it appears that the Appellate Defender's office has been assigned to your case. I suggest that you contact that office to determine the status of proceedings." (Docket Entry 1 at 90.) Documentation supplied by Petitioner also contains a letter, dated October 26, 2012, to Petitioner from the State public defender stating that "The Appellate Entries signed by Judge David on April 12, 2011, was a simple clerical correction of your previously prepared Appellate Entries. The 2011 Appellate Entries were not the start of a new appeal and you have already had a direct appeal. Accordingly, you have not been appointed an attorney and there is no appeal pending on your behalf." (*Id.* at 91.) Petitioner's assertion that his former attorney or attorneys were confused as to whether he was entitled to additional direct review is thus unconvincing.

9

Under the facts alleged, and the documentation provided, a delayed commencement of the statute of limitations under § 2244(d)(1)(B) does not apply.[6]

Next, under subparagraph (D), Petitioner's one-year limitations period would begin on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner does not clearly indicate in his Petition whether he is invoking subparagraph (D), although at one point in his Response he states that "the factual or legal basis for a claim was not reasonably available to his lawyer." (Docket Entry 7 at 9.) However, the factual predicate of Petitioner's claims was available to him when his conviction became final on January 5, 2011. Also, for the reasons set forth above, any argument that confusion related to remand somehow obscured the factual predicate of his claims likewise fails.

The undersigned notes that Petitioner's federal habeas petition would have been subject to statutory tolling if a properly filed post-conviction petition was pending in state court during the one-year limitations period. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.") However, statutory tolling does not apply here. Petitioner's writ of mandamus seeking the correction of a clerical error in his criminal case is not a "separate and distinct proceeding" seeking to challenge his convictions and therefore is not a vehicle for statutory tolling. (Docket Entry 5, Ex. 7.) *See Harris v. Director, Virginia*

---

[6] At one point in his Response, Petitioner suggests that his failure to file a timely federal habeas Petition resulted from constitutionally ineffective assistance of counsel, but he has failed to assert any facts that would support such a claim or impact the limitations analysis. (Docket Entry 7 at 9.)

10

*Dept. of Corrections*, 282 Fed. App'x 239, 241 (4th Cir. 2008) (concluding that a mandamus petition qualifies as an application for collateral review if it initiates a "separate and distinct proceeding" and seeks to challenge the validity of the underlying conviction) (citation omitted); *see also Moore v. Cain*, 298 F.3d 361, 367 (5th Cir. 2002) (concluding that mandamus petition did not toll limitation period where it did not challenge the judgment pursuant to which the petitioner was incarcerated). And, even if Petitioner's petition for writ of mandamus did toll the federal habeas deadline until the clerical error was corrected in mid-April 2011, the instant action was not filed until at the earliest June 11, 2013. Alternatively, if the habeas deadline was tolled until the petition for writ of mandamus was denied by the North Carolina Court of Appeals, which also took place in mid-April 2011, the instant action was still filed more than one year later. Either way, the Petition is barred.

Petitioner also makes a number of equitable tolling arguments which he contends excuse the late filing of his Petition. The United States Supreme Court has recognized that the doctrine of equitable tolling applies to the time bar set forth in Section 2244. *Holland v. Florida*, \_\_\_ U.S. \_\_\_, \_\_\_, 130 S.Ct. 2549, 2562 (2010). Equitable tolling may excuse an otherwise untimely filing when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807 (2005)). However, as explained below, none of these arguments has merit.

First, as noted, Petitioner contends that the remand of the North Carolina Court of Appeals to correct the abovementioned clerical error somehow created an impediment to his filing the instant Petition. To the extent Petitioner contends that this somehow entitles him

11

to equitable tolling, this argument has no merit for the reasons set forth above. Likewise, Petitioner may be asserting that he was under the impression that an appellate lawyer would be assigned to him to assist Petitioner file an additional direct appeal or perhaps a federal habeas petition. Again, as explained above, Petitioner's failure to properly read the court documents correcting clerical errors does not excuse his failure to timely file.

Second, Petitioner contends that he is actually innocent of the crimes for which he was convicted. (Docket Entry 1 at 33.) Recently, the Supreme Court recognized in *McQuiggin v. Perkins*, ___ U.S. ___, ___, 133 S.Ct. 1924, 1928 (2013), an actual innocence exception to AEDPA's time limitations. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see McQuiggin*, ___ U.S. at ___, 133 S.Ct. at 1935. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner contends that "there is no way the Petitioner could have possibly committed the crimes that he is illegally convicted of" because he suffers from "erectile dysfunction." (Docket Entry 1 at 33-34.) In support of this contention, Petitioner has submitted two reports indicating he suffered from erectile dysfunction. (Docket Entry 1 at 114-118.) The undersigned concludes that this is not sufficient evidence to show that in the light of the record as a whole, it is more likely than not that no reasonable juror would find him guilty. In fact, this evidence is not particularly helpful in proving Petitioner's contention of actual innocence. For example,

12

Respondent correctly points out that Petitioner's August 2003 exam, attached to his Petition, indicates that although his erections were "slow to come, easy to lose," he was able to have "satisfactory sex 1-2 times weekly[.]" (Docket Entry 5 at 9 citing Docket Entry 1 at 114.) The second exam, performed in July of 2005, does diagnose Petitioner for "ED" which presumably indicates erectile dysfunction, but also sets forth a plan to treat Petitioner with testosterone. (Docket Entry 1 at 117.) Perhaps most importantly, these documents are not new evidence, since both reports existed at the time of the underlying trial in April of 2009 and should have been readily available to Petitioner, given that they were his own medical records. (*Id.* at § 2.) *See, e.g., Goodman v. Young*, No. 1:12CV596, 2013 WL 2285236, *5 (M.D.N.C. May 23, 2013) ("Petitioner's email and cellular telephone records for the time period of the murder do not constitute 'new' evidence, as they existed at or before the time of his plea.")

The undersigned concludes further that an evidentiary hearing on this issue is not required. In evaluating a request for an evidentiary hearing, a district court "should consider the particular facts raised by the petitioner in support of his actual innocence claim." *Teleguz v. Pearson*, 689 F.3d 322, 331 (4th Cir. 2012). Petitioner has not raised any facts that would entitle him to further exploration of his actual innocence claim. Put simply, Petitioner has not demonstrated any "extraordinary circumstances" entitling him to equitable tolling.[7]

---

[7] Petitioner's actual innocence argument also mentions additional evidence admitted at trial, apparently contending that this evidence demonstrates his innocence. (Docket Entry 1 at 34.) Petitioner also asserts that the trial court committed error by "knowingly and willfully mislead[ing] the jury by telling them there was no evidence in this case." (*Id.*) However, this is far from the sort of new evidence required to meet the high threshold of an actual innocence claim.

13

Finally, the undersigned notes that at times Petitioner's contentions regarding the timeliness of his Petition may devolve into an argument that his claims have merit. Yet, the potential merits of a claim do not affect the timeliness analysis. *See Rouse v. Lee*, 339 F.3d 238, 251-52 (4th Cir. 2003). In the end, Petitioner is not entitled to equitable tolling, his Petition was filed out of time, and Respondent's Motion to Dismiss should be granted.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 4) be **GRANTED** and that the Petition (Docket Entry 1) be **DISMISSED**, and that Judgment be entered dismissing this action.

/s/ Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
October 7, 2013